## WOOD *v.* DUBUQUE & S. C. R. Co.

*(Circuit Court, N. D. Iowa, E. D.* 1886.)

1. RAILROAD COMPANIES—MORTGAGE—BONDS—DEED OF TRUSTEES OF RAILROAD MORTGAGE—CONTRACT TO CONVEY.

   Where a holder of bonds of a land-grant railroad, secured by a mortgage to trustees of its franchises and lands, accepts a proposition from the railroad and trustees to receive certain lands in payment of his bonds, and takes a deed therefor executed by the trustees, the participation of the railroad in the contract to convey estops it from setting up the absence of authority of the trustees to execute the deed to convey the lands in question in an action on a covenant in the deed that the railroad will warrant and defend the title.

2. SAME—REORGANIZATION—NEW RAILROAD COMPANY TAKING RIGHTS AND LIABILITIES OF OLD.

   Where plaintiff has accepted a conveyance of lands in payment of bonds secured by mortgages of the lands and franchises of a railroad company, and its entire property has passed to defendant company under a decree of foreclosure of the mortgages, in which decree it is declared that the defendant company "is a new company, formed * * * for the benefit of all parties concerned in" the former company, "whether as stockholders, bondholders, or creditors," it being expressly provided that "this decree shall not absolutely bar, foreclose, or cut off any of the indebtedness aforesaid, but that the holders thereof shall be entitled to have and receive of" defendant company stock according to other provisions of the decree, defendant is liable on the covenant of warranty in plaintiff's deed.

3. SAME—DECREE MAKING ACCEPTORS OF BENEFIT CONSENT.

   In a decree of foreclosure under which a new railroad company takes all the rights, and, by giving stock therefor, assumes all the obligations, of a former railroad company, a provision "that it is only such persons as consent to come in under the provisions of this decree that shall be entitled to receive stock," etc., means that all persons availing themselves of the benefits of the decree shall be deemed to have consented thereto, and not that a claimant, in order to avail himself of the benefit of the decree must have been a party to the foreclosure suit.

4. STATUTE OF LIMITATIONS—COVENANT OF SEIZIN.

   In Iowa, a covenant of seizin runs with the land, and the statutory limitation does not begin to run until there has been an actual and substantial breach of the warranty.

Demurrer to Petition.

*J. D. Springer,* for complainant.

*Chas. A. Clark*, for defendant.

SHIRAS, J. In the amended petition filed in this cause it is averred, that in the year 1853 the Dubuque & Pacific Railroad Company was organized for the purpose of constructing a line of railway from Dubuque to Sioux City; that by an act of congress approved May 15, 1856, certain lands were granted to the state of Iowa to aid in the construction of said line of railway, and by an act of the general assembly of Iowa approved July 14, 1856, the same were granted to the Dubuque & Pacific Railroad Company; that on the fourteenth of March, 1857, the railroad company executed to trustees a mortgage upon its property and franchises, including the lands granted as aforesaid, to secure the bonds of the company, and on the ninth day of June, 1857, it executed a second mortgage for the same purpose; that of the bonds issued by said company, and secured by said mortgages, the plaintiff became the owner of eight thereof, for $1,000 each, with interest coupons attached; that on the twenty-seventh day of June, 1859, a proposition was made to and accepted by plaintiff, to take, in payment of said bonds, 2,086 acres of land situated in township 91 N., of range 29 W., of fifth principal meridian; that in pursuance of such agreement the trustees of said Dubuque & Pacific Railroad Company, on the twenty-seventh day of June, 1859, executed to Augustus Brandagee a deed of said realty, with the following covenants: "The said trustees, in their official capacity, covenant that the said railroad company shall warrant and defend said premises to said grantee, his heirs and assigns, against the lawful claims of all persons, and, in case of any breach of covenant by eviction from said premises through the lawful claims of any persons, duly established, the said railroad company shall repay to said grantee, or his legal representatives, the said consideration, and lawful interest, in land-grant construction bonds at par, or in money, at its option;" that the conveyance to Brandagee was in fact in trust for plaintiff, and on the fourth day of October, 1867, the said Brandagee executed a conveyance and assignment of said premises to plaintiff; that in the year 1860 the trustees under the mortgages executed by the Dubuque & Pacific Railroad Company filed a bill for the foreclosure thereof in the district court of Dubuque county, Iowa, and on the ninth day of August, 1860, a decree was entered in said cause, settling the amount due upon the bonds secured by the mortgages; providing that, if the amount was not paid in 10 days, the title to the property should vest in the trustees, to be by them conveyed, in conjunction with the Dubuque & Pacific Railroad Company, to the Dubuque & Sioux City Railroad Company; it being declared that "the Dubuque & Sioux City Railroad Company is a new company, formed under articles of incorporation drawn up and adopted for the benefit of all parties concerned in the Dubuque & Pacific Railroad Company, whether as stockholders, bondholders, or creditors."*

The decree further provides for the exchange of the bonded indebtedness for preferred stock in the new company, and for the settlement of all the indebtedness of the Dubuque & Pacific Railroad Company, either for cash, preferred or common stock; it being expressly provided that "this decree shall not absolutely bar, foreclose, or cut off any of the indebtedness aforesaid, but that the holders thereof shall be entitled to have and receive of the Dubuque & Sioux City Railroad Company payment of the same in common stock, preferred stock, or otherwise, according to the nature of their respective claims."

The petition further sets forth a history of the litigation which took place between the railroad company, the Des Moines Navigation Company, and their grantees, which resulted in the defeat of the claim of the railroad company to the lands in question; the last suit being finally ended in 1883 by a decision of the supreme court of the United States. The petition avers "that from time to time, during and between the years 1867 to 1883, she frequently demanded of the defendant either to perfect her title to the premises in said Schedule A described, or to repay her the consideration money herein mentioned, with interest as therein provided; that on such occasions the defendant represented to the plaintiff that it had instituted, and was carrying on, measures for perfecting her title to said lands; that it was prosecuting suits to settle and adjust all adverse claims thereto; and that it would ultimately procure a decree quieting, confirming, and perfecting her title to said lands;" and the plaintiff, relying upon said representations, did not yield to the title of the Des Moines Navigation Company until the final decision by the United States supreme court, in 1883, and refrained from bringing suit upon the covenants of her deed. It is also averred that the defendant, within 10 years, in writing, admitted the claim of plaintiff, and promised to pay the same in case the final decision in the suits brought to settle the title were decided adversely to the company.

To this petition a demurrer is interposed upon several grounds, the first being that it is shown affirmatively that the trustees were without authority to sell or convey the lands in question, and that the railroad company is not liable for their action; no ratification of such unauthorized action being shown. It is argued on behalf of defendant that the only authority possessed by the trustees was to sell and convey lands the title to which passed to the trustees under the act of congress; that the lands conveyed to plaintiff did not pass by the grant; that plaintiff was bound to know the authority or power conferred upon the trustees; and that the company is not bound by the act of the trustees in conveying the land, or in warranting the title thereto.

The averment of the petition is that the Dubuque & Pacific Railroad Company, and the trustees, offered to sell and convey to plaintiff the specific land in question in payment of the bonds held by plaintiff, and that plaintiff agreed thereto; that is, contracted with

the company for the sale of the lands. The deed was executed by the trustees, but, according to the averments of the petition, the contract for the conveyance of the lands was made with the company as well as with the trustees, and hence the question of the authority of the trustees to bind the company as its agents is not presented by the record. In the argument of counsel for defendant it is stated that the central and most important question in the case is whether the Dubuque & Sioux City Company is liable on the covenants of the Pacific Company contained in the deed in controversy. To determine this question, it is necessary to ascertain what obligation was assumed by the Dubuque & Sioux City Company, when it received the transfer of the franchise and property of the Dubuque & Pacific Company.

The decree of foreclosure declares that the Dubuque & Sioux City Company "is a new company, formed under articles of incorporation drawn up and adopted for the benefit of all parties concerned in the Dubuque & Pacific Railroad Company, whether as stockholders, bondholders, or creditors." The decree further provides that the bondholders and secured creditors of the Dubuque & Pacific Company shall receive preferred stock, and the stockholders and unsecured creditors shall receive common stock, in the new company; and that the indebtedness for right of way, operating expenses, and for taxes, should be paid in preferred stock, or in cash; it being also declared "that this decree shall not absolutely bar, foreclose, or cut off any of the indebtedness aforesaid, but that the holders thereof shall be entitled to have and receive of the Dubuque & Sioux City Railroad Company payment of the same in common stock, or otherwise, according to the nature of their respective claims.

Bearing in mind that the Dubuque & Sioux City Company obtained through the foreclosure decree, and the conveyances executed in pursuance thereof, the title to the franchises, lands, depots, rolling stock, and all other property owned by the Dubuque & Pacific Company, it must be held that it became bound for the settlement and payment of all the indebtedness of the Dubuque & Pacific Company, as provided for in the decree. The decree expressly declares that the Dubuque & Sioux City Company was organized for the benefit of the bondholders, stockholders, and creditors of the Dubuque & Pacific Company, and that the holders of claims against the Dubuque & Pacific Company shall be entitled to have and receive of the Dubuque & Sioux City Company payment of their claims in common stock, preferred stock, or otherwise. When, therefore, the franchises and property of the Dubuque & Pacific Company were transferred to the Dubuque & Sioux City Company the claims of creditors of the former company, and their equity in the property, were not extinguished. The Dubuque & Sioux City Company became bound therefor in the manner provided for in the decree.

There can be no question that, had plaintiff not exchanged her bonds for lands, she would have been entitled to demand from the Dubuque

& Sioux City Company preferred stock in settlement of the bonds held by her. The Dubuque & Pacific Company agreed to convey to her certain lands, warranting the title, in exchange for the bonds. The company failed to convey the bonds by a good title, and, in fact, all that plaintiff realized for the bonds was the claim against the Dubuque & Pacific Company upon the covenant of warranty. Holding this claim, she was, when the decree of foreclosure was entered, a creditor of the Dubuque & Pacific Company, and therefore within the terms of the decree, and entitled to share in its benefits.

Counsel for defendant cites many cases, in which it is held that a new company, taking the property of another corporation, is not bound for its liabilities; but these cases are not in point, because the new company had not contracted to become liable. Each case is controlled by the facts out of which it arises.

In the cause now under consideration, it certainly cannot be claimed that the Dubuque & Sioux City Company was not fully bound to give preferred stock in exchange for the bonds of the Dubuque & Pacific Company, and yet the very sentence of the decree which provides for such exchange equally binds the company to give common stock to the unsecured creditors of the Dubuque & Pacific Company.

The right to receive common stock in settlement of their claims was not, as is said in argument, a mere act of grace on part of the Dubuque & Sioux City Company to the general creditors of the Dubuque & Pacific Company. The obligation to thus discharge the debts due the unsecured creditors was part of the consideration paid by the Dubuque & Sioux City Company for the conveyance to it of the franchise and property of the Dubuque and Pacific Company, and the obligation to pay these debts is just as binding, both equitably and legally, upon the Dubuque & Sioux City Company, as is the obligation to give preferred stock to the bondholders.

It is also urged in argument that, to obtain the benefit of the contract on part of the Dubuque & Sioux City Company, it was necessary for the creditor to make himself a party to the foreclosure proceedings; this claim being based upon that part of the decree that provides "that it is only such persons as consent to come in under the provisions of this decree that shall be entitled to receive stock in said last-named company for any claim or demand against the Dubuque & Pacific Railroad Company." It cannot have been the intent of the parties that every one who had a claim for wages, for supplies furnished, for right of way, and the numberless other claims included within the decree, should engage counsel, prepare a pleading, obtain leave to intervene in the foreclosure case, and obtain a decree or order from the court. The delays and expense caused thereby would have been out of all proportion to the benefit, if any, of such a course. The meaning of the clause in question is simply that all persons demanding and receiving stock in the Dubuque & Sioux City Company for claims against the Dubuque & Pacific Company shall be deemed

to have consented to the provisions of the decree, by which the entire property was conveyed to the Dubuque & Sioux City Company.

It is also urged, as a ground of demurrer, that from the allegations of the petition it appears that the action is barred by the statute of limitations. The covenant in the deed is that "the railroad company shall warrant and defend said premises, to said grantee, his heirs and assigns, against the lawful claims of all persons." The argument of defendant is that the covenant of seizin was broken as soon as the deed was delivered, and that the limitation began to run at once. That this is the rule recognized by many of the adjudged cases is not to be gainsaid, but it is not the rule applicable to a warranty of the form provided for by the Iowa statute, as construed by the supreme court of the state.

Thus, in *Schofield* v. *Iowa Homestead Co.*, 32 Iowa, 317, it is held that the covenant runs with the land; that the grantee in the deed containing the covenant cannot recover for the land, if he has conveyed the same, the right of action being in the party to whom the land was conveyed; and that it is the actual sufferer who is entitled to maintain the action. If the covenant runs with the land, the statutory limitation does not begin to run until there has been an actual and substantial breach of the warranty. Rawle, Cov. 860.

The covenant in the deed to Brandagee cannot be so restricted in meaning as to be held equivalent only to the covenant of seizin.

From the averments of the petition, it appears that in 1859 the Des Moines Navigation & Railroad Company claimed a part of the lands lying north of the Racoon Fork of the Des Moines river, which it had been supposed were included in the grant to the Dubuque & Pacific Company; that an action in ejectment was brought by one Litchfield against the Dubuque & Pacific Company, in which the extent of the grant under which the Des Moines Company then claimed title was involved, and it was decided by the United States circuit and supreme courts that such grant did not extend above the Racoon Fork; that in consequence of this decision the officers of the United States recognized the claim of the Dubuque & Pacific and Dubuque & Sioux City Companies to the lands in dispute north of the Racoon Fork, and certified the same up to and during the year 1875; that in 1866 the case of *Wolcott* v. *Des Moines Co.* was decided by the supreme court, in which it was held that the grant of May, 1856, to the state of Iowa, in aid of the Dubuque & Pacific and other railway lines, did not include any odd-numbered sections north of Racoon Fork; that thereupon the Des Moines Company commenced claiming all the lands in the odd-numbered sections lying within five miles of the Des Moines river, which claim was denied by the Dubuque & Sioux City Company; that in 1874, in order to settle the question of title, the Dubuque & Sioux City Company brought a suit in the name of J. B. Dumont against the Des Moines Company; that in 1883 this suit was finally heard in the supreme court of the United States,

and resulted in a decree adjudging and quieting the title to the lands in the odd-numbered sections in the Des Moines Company. It is also averred in the petition that from time to time, during and between the years 1867 to 1883, the plaintiff demanded of defendant the performance of its covenant, either by perfecting the title, or by a repayment of the consideration money; and that on such occasions the defendant represented to plaintiff that the company had instituted, and was carrying on, measures for the perfection of the title, by proper suits therefor, and would ultimately succeed therein; and that plaintiff relied thereon, and did not recognize or yield to the claim of the Des Moines Company until the final determination of the suit brought in name of Dumont by the supreme court, in 1883. The petition also avers that the lands are wild, uncultivated prairie lands, not in actual occupancy of any one.

According to these averments, the plaintiff has not been actually evicted from the premises, but her title was questioned by the Des Moines Company, and thereupon she demanded of defendant that the covenant should be performed, either by perfecting the title, or by repaying the consideration money. In answer to this demand, the defendant stated that it had instituted proceedings for the purpose of settling and quieting the title. These proceedings were not finally ended until in 1883, and until the determination thereof the plaintiff did not abandon her claim to the land.

If the defendant had succeeded in this litigation, and had finally procured a decree adjudging its title good as against the claim of the Des Moines Company, it is clear that it would have thereby performed its covenant with plaintiff. At the request of defendant, the plaintiff did not abandon her claim to the land until the litigation between defendant and the Des Moines Company was ended. Under the facts set forth in the petition, it must be held that the statute did not begin to run until the termination of the litigation instituted by defendants for the purpose of quieting its title. As the final decree in this case was not entered until in 1883, it follows that the petition does not show that the cause of action is barred by the statute of limitations. The demurrer must therefore be overruled, and it is so ordered.